S–1 and S–2, By and Through their parents and Guardians Ad Litem, P–1 and P–2; and P–1 and P–2, Individually, Plaintiffs,

v.

C.D. SPANGLER, Jr., Chairman, State Board of Education of North Carolina; the State Board of Education of North Carolina; the Asheboro City Board of Education; C.D. Heidgerd, Hearing Officer, Asheboro City Board of Education; and Mary Smitherman, Defendants.

Civ. No. C–85–969–G.

United States District Court, M.D. North Carolina, Greensboro Division.

Dec. 31, 1986.

A. Frank Johns, David B. Puryear, Jr., Greensboro, N.C., for plaintiffs.

Edwin M. Speas, Jr., Kaye Webb, Sp. Deputy Atty. Gen., N.C. Dept. of Justice, Raleigh, N.C., for defendants Spangler, State Bd. of Educ. of North Carolina, and C.D. Heidgerd.

D. Westcott Moser, John N. Ogburn, Jr., Stephen S. Schmidly, Asheboro, N.C., for defendant Asheboro City Bd. of Educ.

Richard A. Schwartz, Ann L. Majestic, Raleigh, N.C., for defendant Mary Smitherman.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Plaintiffs have instituted this action under 42 U.S.C. § 1983, alleging the depriva-

tion of rights secured by the Education for All Handicapped Children Act (EAHCA), 20 U.S.C. § 1401 *et seq.*, and the regulations promulgated pursuant to Section 504 of the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794, at 34 C.F.R. § 104.30 *et seq.* On March 4, 1986, the State Board of Education, C.D. Spangler, Jr., former Chairman of the State Board, and C.D. Heidgerd, Administrative Hearing Officer in this matter, moved for summary judgment on Plaintiffs' second claim for relief. Plaintiffs responded to that motion and filed a cross-motion for summary judgment on April 28, 1986. Plaintiffs have also filed a motion to allow voluntary dismissal of their third claim for relief against Defendant Mary Smitherman. On September 29, 1986, this court heard oral argument on motions for summary judgment and Plaintiffs' motion to allow voluntary dismissal of the third claim for relief against Mary Smitherman.

For the reasons that follow, this court will grant Plaintiffs' motion for summary judgment and will deny Defendants' motion for summary judgment as to Plaintiffs' second claim for relief. The court will also grant Plaintiffs' motion to allow voluntary dismissal of the third claim for relief.

## FACTUAL BACKGROUND

S–1 and S–2 are children enrolled in the Asheboro City Schools. In the fall of 1983, following private evaluations of the children, their parents informed the principal at the public school in which they were enrolled that the children were being placed in a private educational facility for one-half of each school day. The parents were permitted, at their own expense, to place their children in the private facility and did so on a half-day basis for the entire 1983–84 school year. Subsequently, the parents demanded that Asheboro City Board of Education provide S–1 and S–2 with an individualized education program comparable to that being provided at the private institution or, alternatively, to provide transportation and tuition for the children to continue at the private facility for the 1984–85 school year. The parents also asked to be reimbursed for expenses incurred by them as a result of the previous year's placement of the children in the private school. Upon the City Board's denial of their request, the parents requested a due process hearing pursuant to N.C.Gen. Stat. § 115C–116. Ultimately, the children were placed satisfactorily; however, the parents continued to demand reimbursement for the 1983–84 school year.

The hearing officer appointed pursuant to N.C.Gen.Stat. § 115C–116 to conduct the due process hearing determined that he had no authority, under the statute or the regulations adopted pursuant thereto, to determine an award of reimbursement and no hearing was held.[1] Plaintiffs subsequently petitioned the State Board of Education either to rule that the hearing officer had such authority, or to amend the regulations in order to confer that authority upon him. The State Board denied the petition and declined to grant either request.

In their second claim for relief, Plaintiffs allege that Asheboro City Board of Education, acting by and through its duly-appointed administrative hearing officer, Defendant Heidgerd, and Defendant Heidgerd himself refused to conduct the hearing to decide Plaintiffs' claim for reimbursement, depriving Plaintiffs of procedural rights secured to them by the EAHCA and the regulations promulgated pursuant to the Rehabilitation Act of 1973.[2]

---

1. At the September 29, 1986, hearing in this court, Defendants State Board of Education, C.D. Spangler, Jr., and C.D. Heidgerd qualified their position by stating that a hearing on the issue of reimbursement could be held and factual findings could be entered, but regardless of these findings, reimbursement would not be ordered.

2. In Plaintiffs' supplemental memorandum on cross-motions for summary judgment, Plaintiffs further allege that the North Carolina hearing procedure denies them constitutional due process.

Plaintiffs' second claim for relief further alleges that Defendant Spangler and the State Board of Education of North Carolina ("State Board") refused to interpret or amend the state regulations governing the conduct of administrative hearings in order to provide Plaintiffs with a hearing decision on their claim for reimbursement. This, too, Plaintiffs allege as a deprivation of their procedural rights secured under the same federal laws.

## DISCUSSION

### I. *Motions for Summary Judgment*

Federal Rule of Civil Procedure 56(c) permits the court to grant summary judgment only if the pleadings, depositions, interrogatory answers, admissions, and affidavits show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The burden is on the moving party to make such a showing, and the court must assess the inferences from the depositions and other documentary materials in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

### A. *Statutory framework*

Although the facts which give rise to this action are relatively simple, this case presents complex and novel legal issues. In analyzing these issues, it is first necessary to understand the statutory framework established by the Education of the Handicapped Act.[3] As recently summarized by the Eleventh Circuit in *Manecke v. School Board of Pinellas County, Florida,*

> [t]he EHA provides public school districts with federal funding for the education of handicapped children so long as

the '[s]tate has in effect a policy that assures all handicapped children the right to a free appropriate public education.' 20 U.S.C. § 1412(1). A 'free appropriate public education' is defined as 'special education and related services' which, *inter alia,* are provided in conformity with the IEP. *Id.* § 1401(18). The IEP serves to tailor the 'free appropriate public education' mandated by the Act 'to the unique needs of the handicapped child.' *Board of Education v. Rowley,* 458 U.S. 176, 181, 102 S.Ct. 3034, 3038, 73 L.Ed.2d 690 (1982). Moreover, federal regulations provide that if necessary to give a handicapped child special education and related services, the state must place that child in a public or private residential program at public expense. 34 C.F.R. § 300.302.

The EHA also contains a detailed procedural component. Any state or local agency receiving federal assistance under the Act must, in accordance with the requirements of 20 U.S.C. § 1415, establish and maintain procedural safeguards. Among these is the requirement that parents be given the opportunity to contest virtually any matter concerning the educational placement of the handicapped child, or the provision of a 'free appropriate public education' to such child. *Id.* § 1415(b)(1)(E). Additionally, if the parents of a handicapped child decide to bring a complaint, they must be given an 'impartial due process hearing.' *Id.* § 1415(b)(2). Federal regulations mandate that a hearing must be held and a final decision must be reached not later than 45 days after the public agency receives a request for a hearing. 34 C.F.R. § 300.512. Upon completion of the administrative process, any party dissatisfied with the administrative final de-

---

**3.** The Education of the Handicapped Act was amended in 1975 to include detailed procedural safeguards, the interpretation of which is the subject of this dispute. The amendment is entitled the Education for All Handicapped Children Act of 1975, hereinafter referred to as the EAHCA. For a general discussion of the EAHCA, *see Board of Education v. Rowley,* 458 U.S. 176, 179–84, 102 S.Ct. 3034, 3037–39, 73 L.Ed.2d

690 (1982); Comment, *Beyond Conventional Education: Definition of Education under the Education for All Handicapped Children Act of 1975,* 48 Law and Contemp.Probs. 64 (1985); Note, *Enforcing the Right to an "Appropriate Education": The Education for All Handicapped Children Act of 1975,* 92 Harv.L.Rev. 1103 (1979).

cision may 'bring a civil action with respect to the complaint' in either state or federal court. 20 U.S.C. § 1415(e)(2).

*Manecke v. School Board of Pinellas County, Florida,* 762 F.2d 912, 916–17 (11th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986) (footnote omitted).

Specifically, Plaintiffs contend that the language of 20 U.S.C. § 1415(b)(1)(E) requires the state hearing officer to conduct a hearing on the issue of reimbursement and order such relief if appropriate. This particular provision of the Act requires the hearing officer to provide the parents or guardian of a handicapped child with "an opportunity to present complaints with respect to *any matter relating to* the identification, evaluation, or educational placement of the child, or *the provision of a free appropriate public education* to such child." *Id.* (emphasis added).

B.  *"Any matter relating to ... the provision of a free appropriate public education"*

█ This court concludes that reimbursement is included within the phrase "any matter relating to ... the provision of a free appropriate public education." In reaching this conclusion, this court takes note of the Supreme Court's recent pronouncement in *Burlington School Committee v. Commissioner of Education,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). There, the Court concluded, "we are confident that by empowering the court to grant 'appropriate' relief Congress meant to include retroactive reimbursement to parents as an available remedy in a proper case." 471 U.S. at 369, 105 S.Ct. at 2003. *See also Hall v. Vance County*

*Board of Education,* 774 F.2d 629, 633 (4th Cir.1985).

Although *Burlington School Committee* holds only that tuition reimbursement is appropriate *judicial* relief in EAHCA cases, the Supreme Court's statutory analysis is instructive on the issue presented in the case *sub judice.*[4] The Court reasoned that retroactive reimbursement of private tuition expense must be "appropriate" relief, *i.e.,* consistent with legislative intent, because if held otherwise "the child's right to a *free* appropriate public education, the parents' right to participate fully in developing a proper IEP, and all of the procedural safeguards would be less than complete." 471 U.S. at 369, 105 S.Ct. at 2003 (emphasis original). Similarly, to allow a state hearing officer to conduct a hearing on the issue of reimbursement, enter findings of fact pursuant to that hearing, but refuse to order reimbursement— even if appropriate—would make the "heart of the EAHCA administrative machinery, its impartial due process hearing"[5] less than complete.

█ Moreover, the court finds no compelling reason why the state hearing officer should be deprived of the power to order a necessary and appropriate remedy. It seems incongruous that Congress intended the reviewing court to maintain greater authority to order relief than the hearing officer, especially in light of the hearing officer's expertise in the area. Accordingly, the court rejects Defendants' characterization of the intent of the Act as providing for "initial administrative review in accordance with state law, with ultimate review by the judiciary, at which stage the full panoply of judicial remedies would be avail-

---

4. Interestingly, the Massachusetts procedure examined in *Burlington School Committee* allowed claims for tuition reimbursement to be decided in the administrative hearing process. The court further notes that other state EAHCA hearing procedures also allow for administrative decision of reimbursement claims. *See, e.g., In Re: New York City School District, Case No. 10988,* 1982–83 EHLR Dec. 504:272 (New York Commissioner of Education, 1983) (affirming local hearing officer reimbursement decision); *David W. v. Vidor Independent School*

*District, Case No. 063–SE–283,* 1983–84 EHLR Dec. 505:119 (Texas, 1983) (local hearing officer decision, treating claim for compensatory educational services as indistinguishable from reimbursement claim); *Palo Alto Unified School District, Case No. SE 85380,* 1985–86 EHLR Dec. 507:205 (California, 1985) (local hearing officer decision); *Case No. SE–7–85,* 1985–86 EHLR Dec. 507:144 (Illinois, 1985) (state review panel affirming local hearing officer decision).

5. *Manecke,* 762 F.2d at 919.

able." This characterization cannot be reconciled with recent judicial pronouncements concerning the importance of the Act's procedural component:

> The importance of these procedural safeguards 'cannot be gainsaid.' *Rowley*, 458 U.S. at 205, 102 S.Ct. at 3050. Indeed, the substance of the EAHCA is in essence embodied in the procedural mechanisms it mandates. *See id.* at 206, 102 S.Ct. at 3050 ('[A]dequate compliance with the procedures prescribed [will] in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP.'); *see also Smith v. Robinson*, [468] U.S. [992], 104 S.Ct. 3457, 3469, 82 L.Ed.2d 746 (1984) (The procedures 'effect Congress' intent that each child's individual educational needs be worked out through a process that ... includes ... detailed procedural safeguards.'). The underlying assumption of the Act is that to the extent its procedural mechanisms are faithfully employed, handicapped children will be afforded an appropriate education.

*McKenzie v. Smith*, 771 F.2d 1527, 1532 (D.C.App.1985).

Defendants' characterization is also at odds with the legislative history of the Act:

> If a parent contends that he or she has been forced, at that parent's own expense, to seek private schooling for the child because an appropriate program does not exist within the local educational agency responsible for the child's education and the local educational agency disagrees, that disagreement and *the question of who remains financially responsible* is a matter to which the due process procedures established under [the predecessor to § 1415] appl[y].

S.Rep. No. 168, 94th Cong., 1st Sess. 32, *reprinted in* 1975 U.S.Code Cong. & Ad. News 1425, 1456 (emphasis added). *See* 34

C.F.R. § 300.403(b) (1984) (disagreements and question of financial responsibility subject to the due process procedures). In light of the judicially recognized importance of the Act's procedural component, its legislative history and the regulations promulgated pursuant thereto, this court is unable to conclude that the Act's "initial administrative review" is as limited as Defendants suggest.

## C. *The relevance of state law*

■ This court is not persuaded by Defendants' continued reference to North Carolina law. Initially, the court notes that Defendants' position is inconsistent. The North Carolina statutes cited by Defendants do not specifically confer authority on the hearing officer to conduct a hearing on the issue of reimbursement; however, Defendants admit that such a hearing is available.[6] More importantly, the mandate of the EAHCA must supersede state law to the contrary. To the extent that North Carolina's interpretation of the authority of a hearing officer is a material variation from this court's interpretation of 20 U.S.C. § 1415(b)(1)(E), "the federal version must control because it sets forth the minimum procedural safeguards intended by Congress to be followed by State and local agencies receiving federal assistance when making educational placement for handicapped children." *Board of Education v. Ambach*, 612 F.Supp. 230, 234 n. 2 (E.D.N. Y.1985). *See also Antkowiak by Antkowiak v. Ambach*, 638 F.Supp. 1564, 1568 (W.D.N.Y.1986).

■ Defendants further assert that the imposition of monetary penalties is a judicial power which the legislature may not confer upon an administrative agent or officer without violating the principle of separation of powers. While such a statement maintains some legal basis, it is a gross

---

**6.** Given the availability of a due process hearing on the issue of reimbursement, it seems but a small step to require Defendants to order reimbursement if the hearing officer determines that it is justified. Indeed, this conclusion is consistent with the plain language of the EAHCA which requires "finality" in the due process hearing decision. 20 U.S.C. § 1415(e)(1). *See*

*Helms v. McDaniel*, 657 F.2d 800, 805 (5th Cir. 1981) ("To appoint an officer to conduct the hearing but then to treat his report only as a recommendation violates the Act's requirement that the decision of the hearing officer be final unless appealed"), *cert. denied*, 455 U.S. 946, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982).

mischaracterization to equate an order of reimbursement with the imposition of monetary penalties. "Reimbursement merely requires [the local education agency] to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP." *Burlington School Committee*, 471 U.S. 369, 105 S.Ct. at 2003.

Finally, Defendants argue that "one of the State Board's reasons for not granting that authority to hearing officers was its inability under the EAHCA to approve, disapprove or modify hearing officer decisions, contrary to ordinary administrative practice." In support of this contention, Defendants cite the case of *Antkowiak by Antkowiak v. Ambach*, 638 F.Supp. 1564 (W.D.N.Y.1986).

However, the district court in that case did not consider whether reimbursement was available at the administrative level, but rather whether the State Commissioner of Education could review part or all of an impartial hearing officer's decision which was fully favorable to plaintiff. Observing that Section 1415(e)(1) of the EAHCA requires the decision of the hearing officer to be "final" unless reviewed by a state or federal court, the district court denied the State Commissioner of Education a right to an administrative appeal. *Id.* at 1570. Indeed, the New York procedure allowed claims for tuition reimbursement to be decided in the administrative hearing process. *See supra* n. 4. If relevant at all, *Antkowiak by Antkowiak* undermines—not enhances—Defendants' position, for there the district court reasoned that the EAHCA precluded that which the state sought to do. Similarly, this court concludes that the language of the EAHCA mandates that which the state seeks to avoid.[7]

## D. *Judicial economy*

Defendants correctly noted at oral argument that should Plaintiffs be granted a hearing on the issue of reimbursement, and the hearing officer determined that reimbursement was appropriate but nevertheless refused to order reimbursement, Plaintiffs could then proceed to either state court or federal court under the EAHCA. In such case, Plaintiffs would certainly be "aggrieved by the findings and decision" resulting from the administrative proceedings. 20 U.S.C. § 1415(e)(2). However, this fact does not undermine the advisability of Plaintiffs' position. Under Defendants' interpretation of the Act, such a litigant would be forced to proceed to either state or federal court to seek the relief that the state itself had previously determined appropriate. Congress could not have intended the EAHCA procedural safeguards to be so burdensome and time-consuming, especially in light of the strong congressional preference that all issues cognizable under the Act be resolved through the procedures defined in 20 U.S.C. § 1415. *See Smith v. Robinson*, 468 U.S. 992, 1009, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984). Judicial economy, benefitting both plaintiffs and defendants alike, thus provides further support for Plaintiffs' statutory interpretation.

## E. *The eleventh amendment*

Citing *Pennhurst State School and Hospital v. Halderman (Pennhurst II)*, 465 U.S. 89, 103–17, 104 S.Ct. 900, 914–17, 79 L.Ed.2d 67 (1984), Defendants contend that the eleventh amendment is a jurisdictional bar to Plaintiffs' action. This assertion requires but brief discussion. In *Pennhurst II*, the Court held that the eleventh amendment bars a pendent claim against state agencies and officers seeking prospective injunctive relief for a violation of *state* law. *Id.* (emphasis added). Unlike *Pennhurst II*, this case does not involve a pendent state claim but rather relief sought on the basis of a violation of federal law. *See David D. v. Dartmouth School Committee*, 775 F.2d 411, 422 (1st Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1790, 90 L.Ed.2d 336 (1986). Indeed, the federal courts have uniformly concluded

---

**7.** As noted, Plaintiffs' position is buttressed by the "finality" requirement embodied in 20 U.S.C.

§ 1415(e)(1). *See supra* n. 6.

that *Pennhurst II* does not bar plaintiffs' suit in federal court under the Education for All Handicapped Children Act. *See Geis v. Board of Education of Parsippany-Troy Hills*, 774 F.2d 575, 581 (3d Cir. 1985); *John H. v. Brunelle*, 631 F.Supp. 208, 212 (D.N.H.1986).

Ironically, Defendants' interpretation of the Act is more intrusive on the right of the State to enforce its laws in its own forum than Plaintiffs' construction of the EAHCA. As noted, the procedure envisioned by Defendants requires Plaintiffs to proceed to federal court to enforce their reimbursement claim. Conversely, Plaintiffs' construction would allow the state hearing officer to resolve independently the reimbursement issue and thereby minimize federal intervention.

### F. *Private right of action*

Nor does Defendants' argument that Plaintiffs lack a private right to enforce their claim that hearing officers must have the power to order reimbursement for private school placement affect this court's judgment. "[W]here, as here, the local educational agency deprives a handicapped child of due process by effectively denying that child access to the heart of the EHA administrative machinery, the impartial due process hearing, an action may be brought under § 1983." *Manecke*, 762 F.2d at 919. *See also Smith v. Robinson*, 468 U.S. at 1004 n. 8 and 1014 n. 17, 104 S.Ct. at 3465 n. 8 and 3470 n. 17.

■ Clearly, then, Plaintiffs maintain a private right of action through which to vindicate the loss of their procedural rights guaranteed by the EAHCA. The question remains, however, whether Defendants may be enjoined from further interpreting North Carolina law in a manner inconsistent with this court's construction of § 1415(b)(1)(E) of the EAHCA. While an argument can be fashioned that such an order grants relief to non-parties, the court is convinced that an injunction against C.D. Spangler, Jr., and State Board of Education is necessary and proper relief for *this* case. The fact that this order benefits other parents of handicapped children is merely incidental.

■ Stated differently, that Plaintiffs have not postured this case as a class action does not prevent this court from granting class relief. By the very nature of this controversy, the attack is on the State Board of Education's interpretation of North Carolina law. The question presented is whether that interpretation falls below the minimum level of protection established by the EAHCA. Once the court determines that such is the case, the court must order that it be harmonized with the federal mandate. Moreover, to limit the benefits of the injunction to the named plaintiffs could deprive other handicapped children in North Carolina of important procedural rights secured to them by federal law. *See Potts v. Flax*, 313 F.2d 284 (5th Cir.1963) (an early desegregation case supporting view that class relief can be given without a class action).

### G. *Conclusion*

In sum, this court holds that the procedural safeguards embodied in Section 1415(b)(1)(E) of the EAHCA require Defendants Asheboro City Board of Education and C.D. Heidgerd to conduct an administrative hearing and render a decision in that hearing on Plaintiffs' claim for tuition reimbursement. With respect to Defendants C.D. Spangler, Jr., and State Board of Education, this court holds that their interpretation of North Carolina law is in violation of Section 1415(b)(1)(E) of the EAHCA to the extent that it precludes a state hearing officer from conducting an administrative hearing on the issue of reimbursement and ordering reimbursement if appropriate. Because these holdings are based on the language of the EAHCA, this court finds it unnecessary to reach Plaintiffs' contention that Defendants' hearing procedure violates 34 C.F.R. § 104.36 or that the North Carolina hearing procedure denies Plaintiffs' constitutional due process. Thus, the court concludes that there is no genuine issue of material fact and that Plaintiffs are entitled to judgment on their second claim for relief as a matter of law.

## II. *Plaintiffs' Motion to Allow Voluntary Dismissal of Third Claim for Relief*

Plaintiffs seek to dismiss their claim against Ms. Smitherman because discovery has shown that she acted within the scope of her authority in accordance with established policies and procedures of the Asheboro City Board of Education, and that she acted in good faith in dealing with the Plaintiffs. Defendants object to the proposed motion on the basis that the motion could remove the Defendant Asheboro City Board of Education's defense that liability may not be imputed to it solely on the basis of *respondeat superior*, should the Defendant Smitherman be found to have violated the Plaintiffs' federal constitutional rights.

In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court stated:

> Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.... [L]ocal governments ... may [also] be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels.

*Id.* at 690–91, 98 S.Ct. at 2035–36 (footnotes omitted). Thus, in order to find the Defendant Asheboro City Board of Education liable, it would be necessary to find that the alleged actions of its agent, the Defendant Smitherman, reflected official Board of Education policy or that they reflected Board custom. *See Fracaro v. Priddy*, 514 F.Supp. 191, 200 (M.D.N.C.1981).

Defendants maintain that Ms. Smitherman did not violate any of the rights of the Plaintiffs but, in the alternative, if Ms. Smitherman did violate Plaintiffs' rights, liability cannot be imputed to Defendants under a theory of *respondeat superior*.

Defendants further assert that if Ms. Smitherman were dismissed from the case at bar the Defendant Board of Education would be denied the opportunity to establish that its policy toward the Plaintiffs was at all relevant times within the requirements of federal statutory and constitutional law and that, therefore, it will not be liable under *respondeat superior* theory.

■ Given the Supreme Court's pronouncement in *Monell*, it is clear that Defendants must be given the opportunity to refute Plaintiffs' allegations that Ms. Smitherman acted pursuant to either stated or unstated official policy. However, this court notes that dismissal of Plaintiffs' claim against Ms. Smitherman in no way denies Defendant Board of Education such opportunity. Moreover, Plaintiffs are not pursuing their claim on the basis of *respondeat superior*, but rather, are directly attacking Defendants' official policy. Therefore, this court concludes that the dismissal of Defendant Smitherman does not jeopardize the rights of Defendant Board of Education and will allow voluntary dismissal of third claim for relief.

An order and judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.

### JUDGMENT, ORDER, and INJUNCTION

For the reasons set forth in a memorandum opinion filed contemporaneously herewith,

IT IS ORDERED and ADJUDGED that Plaintiffs' motion for summary judgment on Plaintiffs' second claim for relief be, and the same hereby is, GRANTED;

IT IS FURTHER ORDERED that Defendants' motion for summary judgment on Plaintiffs' second claim for relief be, and the same hereby is, DENIED;

IT IS FURTHER ORDERED that Plaintiffs' motion to allow dismissal of Plaintiffs' third claim for relief against Defendant Smitherman be, and the same hereby is, GRANTED, and the third claim for re-

lief against Defendant Smitherman hereby is DISMISSED; and

IT IS FURTHER ORDERED that Defendants Asheboro City Board of Education and C.D. Heidgerd conduct a hearing on Plaintiffs' claim for reimbursement, enter findings of fact and conclusions, and, if appropriate, order reimbursement;

IT IS FURTHER ORDERED that Defendants C.D. Spangler, Jr., and/or his successor in office as Chairman of The State Board of Education of North Carolina, and The State Board of Education of North Carolina be, and the same hereby are, ENJOINED from further interpreting North Carolina law in a manner inconsistent with this court's interpretation of Section 1415(b)(1)(E) of the Education for All Handicapped Children Act, 20 U.S.C. § 1401 *et seq.*;

IT IS FURTHER ORDERED that the parties shall file with the court by January 30, 1987, a statement of their positions with respect to any issues that may remain in this action, including Plaintiffs' claim for attorney's fees and costs.