**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

STATEWIDE REAPPORTIONMENT
ADVISORY COMMITTEE; WILLIAM
GIBSON, Doctor; FREDERICK CALHOUN
JAMES, Bishop; HERBERT WILLIAMS,
Reverend; WILLIE B. OWENS; SOUTH
CAROLINA CONFERENCE OF THE
NAACP BRANCHES,
Plaintiffs-Appellants,

v.

DAVID M. BEASLEY, in his official
capacity as Governor of South
Carolina; DAVID H. WILKINS, in his
official capacity as Speaker of the
South Carolina House of
Representatives,
Defendants-Appellees,

THE SOUTH CAROLINA SENATE,
Intervenor.

No. 96-1086

MICHAEL G. BURTON, as Executive
Director on behalf of the
Republican Party; WILLIAM P.
COLLINS, III; EARL COPELAND;
WILLIAM PATRICK FLACK; FRANK E.
GIBSON, III; NANCY D. HAWK; GUS
ROBERTS,
Plaintiffs-Appellants,

v.

No. 96-1099

DAVID M. BEASLEY, in his official
capacity as Governor of South
Carolina; DAVID H. WILKINS, in his
official capacity as Speaker of the
South Carolina House of
Representatives,
Defendants-Appellees,

THE SOUTH CAROLINA SENATE,
Intervenor.

Appeals from the United States District Court
of South Carolina, at Columbia.
Clyde H. Hamilton, Circuit Judge; G. Ross Anderson, Jr.,
District Judge; Falcon B. Hawkins, Senior District Judge.
(CA-91-3310-3, CA-91-2983-3)

Argued: September 24, 1996

Decided: October 30, 1996

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by published per curiam opinion. Judge Niemeyer and
Judge Motz wrote concurring opinions.

_____

2

**COUNSEL**

**ARGUED:** Moffatt Laughlin McDonald, AMERICAN CIVIL LIB-
ERTIES UNION FOUNDATION, INC., Atlanta, Georgia; Thomas
Rush Gottshall, SINKLER & BOYD, P.A., Columbia, South Caro-
lina, for Appellants. Kenneth Paul Woodington, Senior Assistant
Attorney, General, Columbia, South Carolina, for Appellees. Fred
Thompson, III, STOKES & THOMPSON, Charleston, South Caro-
lina, for Intervenor. **ON BRIEF:** Dennis Courtland Hayes, Willie
Abrams, NAACP SPECIAL CONTRIBUTION FUND, Baltimore,
Maryland; John Roy Harper, II, Columbia, South Carolina, for Appel-
lants. Charles Molony Condon, Attorney General, Treva G. Ash-
worth, Deputy Attorney General, Columbia, South Carolina, for
Appellee Wilkins; Charles E. Carpenter, Jr., Frederick A. Crawford,
Deborah M. Sheffield, RICHARDSON, PLOWDEN, GRIER &
HOWSER, P.A., Columbia, South Carolina, for Appellee Beasley.
Mark Packman, DICKSTEIN, SHAPIRO & MORIN, Washington,
D.C.; Gedney Howe, III, Charleston, South Carolina, for Intervenor.

_____

**OPINION**

PER CURIAM:

The Statewide Reapportionment Advisory Committee and the
South Carolina Republican Party appeal the denial of attorney's fees
in this action brought pursuant to the Voting Rights Act. We affirm.

I.

In 1990, census figures indicated that congressional districts and
state legislative districts were apportioned unconstitutionally. After
the release of these figures, the South Carolina General Assembly
established committees to craft new redistricting plans. Deliberations
continued with no success prior to the adjournment of the legislative
session in June, 1991.

On October 4, 1991, the South Carolina Republican Party instituted
an action in federal court alleging that the existing plans were malap-

portioned and unconstitutional. The party sought a declaration that the legislative process was at an impasse, thereby allowing for judicial intervention. A few weeks later, the Statewide Reapportionment Advisory Committee ("SRAC"), an unincorporated association of private individuals and organizations, filed a similar suit. A three-judge court was constituted to hear the complaints pursuant to 28 U.S.C. § 2284, and the two cases were consolidated in November, 1991. See Burton v. Sheheen, 793 F. Supp. 1329 (D.S.C. 1992), vacated, Statewide Reapportionment Comm. v. Theodore, 508 U.S. 968 (1993), and Campbell v. Theodore, 508 U.S. 968 (1993).

In January 1992, the South Carolina Governor, Carroll A. Campbell, Jr., vetoed the plans passed by the General Assembly, requesting a plan with more majority black districts. When no further action was taken by February 1992, the three-judge court declared a legislative impasse, and allowed proceedings to go forward. After a three week trial, the court rejected redistricting plans submitted by all parties, and adopted its own plan. The State followed this plan during 1992 state elections.

SRAC, on one hand, and the Governor, on the other, appealed the court's decision. SRAC asserted, inter alia, that the court had not properly applied the analysis required by § 2 of the Voting Rights Act, 42 U.S.C. §§ 1973 et seq., in implementing the plans. (A § 2 review calls on a court to "assess the impact of the contested [plan] on minority electoral opportunities." Barton , 793 F. Supp. at 1349, citing Thornburg v. Gingles, 478 U.S. 30, 44 (1986)). In response to the SRAC appeal, the Supreme Court vacated the lower court's judgment and remanded the case for "further consideration in light of the position presented by the Solicitor General in his brief for the United States filed May 7, 1993." SRAC v. Theodore , 508 U.S. 968 (1993). The Governor's appeal received an identical response. Campbell v. Theodore, 508 U.S. 968 (1993). Like SRAC, the Solicitor General had maintained that the three-judge court had failed to apply a proper § 2 analysis to the plans.

On remand, the three-judge court allowed the South Carolina General Assembly until August 1, 1995, to adopt state redistricting plans and preclear them with the Justice Department in accordance with the Voting Rights Act. Meanwhile, the Senate requested court approval

4

to utilize the court-developed 1992 plans in a special October 1994 election for an open senatorial seat. SRAC and the Republican Party objected, arguing that these plans as well must be precleared prior to their use in this election. The court agreed with appellants and denied the Senate's motion.

By June 1995, the General Assembly had approved and precleared plans for the reapportionment of both legislative houses as well as for congressional districts in the state. The court case was dismissed two months later. SRAC and the Republican Party subsequently moved for attorney's fees pursuant to 42 U.S.C. §§ 1973l(e) and 1988. The three-judge court denied that motion, and this appeal followed.

II.

The question for our review is whether SRAC and the Republican Party prevailed, as only prevailing parties are eligible for attorneys fees. In Farrar v. Hobby, 506 U.S. 103 (1992), the Supreme Court clarified the applicable standard:

> [T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. Otherwise the judgment or settlement cannot be said to "affec[t] the behavior of the defendant toward the plaintiff."

Id. at 111 (internal citations omitted).

This Court interpreted Farrar's requirements in S-1 and S-2 By and Through P-1 and P-2 v. State Bd. of Educ. of North Carolina, 6 F.3d 160 (4th Cir. 1993) (Wilkinson, J., dissenting), vacated, 21 F.3d 49, 51 (4th Cir.) (en banc) (adopting Judge Wilkinson's dissent as the majority opinion), cert. denied, 115 S.Ct. 205 (1994). There, parents of handicapped students brought an action, pursuant to 42 U.S.C. § 1983, against city and state officials for tuition reimbursement. The

5

district court granted the plaintiffs summary judgment and the defendants appealed. S-1 and S-2 v. Spangler, 650 F. Supp. 1427 (M.D.N.C. 1986). After city officials agreed to reimburse tuition expenses, the parents continued to maintain their action against state officials. We held that the settlement with city officials mooted any action against state officials, and vacated the district court's grant of summary judgement to the plaintiffs against state officials. S-1 and S-2, 832 F.2d 294, 298 (4th Cir. 1987). On remand, the district court, recognizing the case's impact on state legislation, ordered that the state pay attorney's fees to the plaintiffs; a panel of this court affirmed. 6 F.3d 160.

Sitting en banc, a majority of this court reversed that decision. 21 F.3d 49. In doing so, the court rejected "catalyst" analysis of causation in determining prevailing party status. The court held that "[t]here is no way . . . that Farrar and a broad `catalyst theory' of attorneys' fees recovery can be reconciled." 6 F.3d at 168-69 (Wilkinson, J., dissent) (adopted by majority opinion in S-1 and S-2, 21 F.3d at 51). Rather, the court concluded that the determinative factor would be a "material alteration of the legal relationship between the parties" as manifested by whether the plaintiff was entitled to enforce "a judgment, consent degree, or settlement against the defendant." Id. at 168-69 (quoting Farrar, 113 S.Ct. at 574).

Applying our holding in S-1 and S-2 to the instant case, the court below determined that SRAC and the Republican Party did not meet the definition of "prevailing parties." Because the court's original decision was vacated by the Supreme Court, they were not entitled to enforce any judgment against the defendants. Id. at 169 ("[T]he judgment's vacatur on appeal renders it a legal nullity.").

We agree with the three-judge court's ruling. SRAC and the Republican Party fail to meet the standard set forth in S-1 and S-2: neither the district court's vacated judgement, nor the Supreme Court's decision to remand to the district court for further consideration in light of the Solicitor General's brief constitutes an enforceable judgment against the defendants. Similarly, the lower court's holding regarding preclearance of special election plans by the Justice Department does not represent a "material alteration in the relation-

6

ship between the parties" such as to merit treatment as a "prevailing party." Id. at 168-69.*

Because SRAC and the Republican Party cannot establish that they meet the requirements set forth in S-1 and S-2 , they are not entitled to attorney's fees.

AFFIRMED

NIEMEYER, Circuit Judge, concurring:

To be a prevailing party in a legal action, a party must obtain relief in the action on the merits of his claim, see Farrar v. Hobby, 506 U.S. 103, 111 (1992), and not from some other process. The fee shifting statutes, such as 42 U.S.C. §§ 1973l(e) and 1988, reward successful litigants, not success in the political process even if the political success was a response to the litigation. Accordingly, in S-1 and S-2 v. State Bd. of Educ., 21 F.3d 49, 51 (4th Cir.) (en banc) (adopting Judge Wilkinson's dissent at 6 F.3d 160 (4th Cir. 1993)), cert. denied, 115 S. Ct. 205 (1994), we rejected a broad catalyst theory for awarding attorneys fees to litigants simply because their position in litigation was vindicated by an external process or sequence of events outside of the litigation.

While I agree that S-1 and S-2 requires us to affirm in this case, I believe the question of who prevailed, even when measuring the results obtained through the political process, is so unclear that whether we apply S-1 and S-2 or evaluate who won in the political arena, I could not conclude that the district court abused its discretion in denying the appellants' attorneys fees.

_____

*In passing, SRAC and the Republican Party suggest that an exception to S-1 and S-2 be made for redistricting cases. But S-1 and S-2 itself contains language rejecting such a carve-out. 6 F.3d at 169 n.2 (stating that a redistricting case, Craig v. Gregg County, 988 F.2d 18, 21 (5th Cir. 1993), "skirted the issue" as to the conflict between catalyst theory and Farrar and therefore was unpersuasive).

7

DIANA GRIBBON MOTZ, Circuit Judge, concurring:

The parties have not established that they meet the"prevailing party" requirements of S-1 and S-2. No panel can refuse to follow a circuit precedent established by another panel, let alone one established by the entire court sitting en banc. Accordingly, I concur in the court's opinion and judgment.

I write separately only to indicate that I believe that the Supreme Court's holding in Farrar would not necessarily require the same outcome. I note that, when we issued S-1 and S-2 , our conclusion that Farrar dicta eviscerated the catalyst analysis was contrary to the view of every other circuit to address the question. In the three years since the issuance of S-1 and S-2 no circuit has followed our holding. Several have specifically disagreed with it. See, e.g., Brown v. Local 58, IBEW, 76 F.3d 762, 772 (6th Cir. 1996); Beard v. Teska, 31 F.3d 942, 951 (10th Cir. 1994); Kilgour v. City of Pasadena, 53 F.3d 1007 (9th Cir. 1995); Zinn By Blankenship v. Shalala, 35 F.3d 273, 275 (7th Cir. 1994). See also Southeastern Fisheries Ass'n v. Chiles, 876 F. Supp. 270, 271 (S.D. Fla. 1995).

Ironically, the "catalyst" analysis was devised to address cases like the one at hand. SRAC and the Republican Party advance the classic "but for" scenario: had it not been for the filing of their complaints in the district court, the court would not have intervened in the reapportionment process. Without such intervention, the South Carolina General Assembly would not have adopted a scheme that drew heavily from that judicially-crafted plan. Yet even if SRAC and the Republican Party did cause those results, S-1 and S-2 forecloses this argument and requires that, without further ado, we conclude that they were not prevailing parties because they did not win an enforceable judgment against the defendants.

8