**Brian MONCRIEFFE–TAYLOR,
et al., Plaintiffs,**

v.

**Paul VANCE, et al., Defendants.**

**Civil No. AW–96–2510.**

United States District Court,
D. Maryland.

Nov. 15, 1996.

Matthew B. Bogin, and Michael J. Eig, Washington, DC, for plaintiffs.

Edward J. Gutman, Baltimore, MD, for defendants.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Before the Court are Defendants' Motion to Dismiss and Plaintiffs' Motion for Summary Judgment. The Court has reviewed the Memoranda submitted by the parties. No hearing is deemed necessary. Local Rule 105.6 (D.Md.). For the reasons that follow, the Court will grant Defendants' Motion to Dismiss, and will deny Plaintiffs' Motion for Summary Judgment.

### Background

This case arises from a proceeding brought by the mother of Brian Moncrieffe–Taylor against the Montgomery County Public Schools ("MCPS"), under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq. Brian and his mother bring the present action under the Disabled Children's Protection Act ("DCPA"), 20 U.S.C. § 1415(e)(4)(B), claiming a right to reimbursement of attorneys' fees and costs as prevailing parties under IDEA.

The parties are not in dispute regarding the most basic facts in the case. Following are these facts. Brian Moncrieffe–Taylor is a teenage student with a disability and special educational needs. On January 17, 1996, representatives of MCPS met to consider Brian's special educational needs. This meeting was in accordance with the requirements of Article 49D § 20.1(c)(ii) of the Annotated Code of Maryland, which requires a Local Coordinating Council ("LCC") in each subdivision to review and approve any requests by parents for residential placements of disabled students. At the meeting, the MCPS representatives agreed that Brian required the intense level of services (Level VI) available for a student under IDEA. The MCPS representatives did not decide on a specific placement at that time, but instead proceeded to the next step in the process set forth in Maryland state law, Article 49D § 20.1(c)(ii). Pursuant to this statutory requirement, the MCPS representatives were required to pursue options for an Intensity VI residential placement in Maryland that would accept Brian, before seeking placement for Brian out-of-state.

On January 24 or January 26, 1996 [1], despite the MCPS decision to provide Brian with an Intensity VI placement and initiation of the process of finding a facility for Brian, Ms. Moncrieffe's attorney Mr. Eig filed an application for a due process hearing. The application argued that the MCPS had failed to provide an appropriate residential placement for Brian in a timely manner. In a February 21, 1996 letter, MCPS's counsel stated, "It is very unclear to us exactly why you filed this appeal" and explained that the basis for the appeal ("need for residential placement") had been addressed and satisfied in the January 17, 1996 meeting.

On March 6, 1996, all six of the schools in Maryland to which application had been made for Brian rejected him. Consequently, the LCC reconvened that day and recommended that application be made to out-of-state schools, and six such applications were subsequently submitted. On March 18, 1996, the MCPS attorney wrote to Mrs. Moncrieffe's attorney Mr. Eig, stating again that the parties were not in dispute regarding Brian's "need for residential placement," updating Mr. Eig on the process of locating a school for Brian, and questioning the purpose of the upcoming hearing. In a March 20, 1996 teleconference between the parties and William Miller, the hearing officer assigned to the hearing, Mr. Eig offered to withdraw the hearing request if MCPS would sign a settlement agreement. MCPS counsel refused this settlement proposal, stating that MCPS had agreed to Brian's placement and begun the process of locating a facility for him before Mr. Eig had even begun representing Brian.

On March 25, 1996, Mr. Miller conducted a teleconference hearing with the parties. His decision essentially confirmed the position held by both parties that Brian required "immediate intervention in a residential setting." Mr. Miller also admonished MCPS for its failure to secure a placement for Brian at an earlier date. On March 29, 1996, Brian was accepted to one of the out-of-state programs to which MCPS had made application, the Bennington School in Vermont.

On April 19, 1996, MCPS noted an appeal of Mr. Miller's decision before a State Level Review Board, with the purpose of clearing the record of any inference that Mr. Miller's decision or Mr. Eig's representation had influenced Brian's placement. However, MCPS subsequently decided to dismiss the appeal, as MCPS concluded that there was essentially no decision to appeal.

Plaintiffs bring this action seeking attorneys' fees for Mr. Eig's representation of Brian and Mrs. Moncrieffe, under the DCPA, 20 U.S.C. § 1415(e)(4)(B). Defendants filed a Motion to Dismiss, claiming that there was no case or controversy at the time of Mr. Miller's hearing, and that the Complaint therefore fails to state a claim upon which relief can be granted. Plaintiffs then filed a Motion for Summary Judgment, claiming that they are the prevailing parties and are therefore entitled to attorneys' fees under the statute.

---

1. The parties have cited different dates for this request, but because this difference is immaterial to the outcome here, the Court will overlook it for the present purposes.

## Standards of Review

The standard for a motion for summary judgment is well established. Summary judgment is appropriate when there is no genuine dispute of material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the Court must construe all facts, and all reasonable inferences drawn therefrom, in the light most favorable to the Defendant. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587; 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The standard for a motion to dismiss is also clearly delineated. Under Rule 12(b)(6), F.R.Civ.P., a Motion to Dismiss should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In determining whether to dismiss a complaint, the Court must view the well-pleaded material allegations in a light most favorable to the plaintiff, with the alleged facts accepted as true. 2A *Moore's Federal Practice*, ¶ 12.07[2.–5] (2d ed. 1987); 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 304–21 (1990).

## Analysis

The central issue in this case is whether Plaintiffs are prevailing parties entitled to attorneys' fees under the DCPA, 20 U.S.C. § 1415(e)(4)(B). This statute provides, in relevant part, that "[i]n any action or proceeding brought under this subsection, the Court in its discretion, may award reasonable attorneys' fees ... to the parent or guardian of a handicapped child or youth who is the prevailing party." 20 U.S.C. § 1415(e)(4)(B). Although the statute itself does not define the term "prevailing party," legislative history reflects that Congress intended "that the terms 'prevailing party' and 'reasonable' be construed consistent with the U.S. Supreme Court's decision in *Hensley v. Eckerhart.*" H. Report No. 99–296, 99th Cong., 1st Sess. (Oct. 2, 1985). The *Hensley* decision provides that "plaintiffs may be considered 'prevailing parties' for attorneys' fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The U.S. Supreme Court further clarified this issue in *Texas State Teachers Assoc. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), holding that "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." 489 U.S. at 792, 109 S.Ct. at 1494.

The question in the present case is whether Plaintiffs, as represented by Mr. Eig, did in fact "succeed on any significant issue" or achieve a "material alteration." Defendants argue that the hearing requested by Mr. Eig on Plaintiffs' behalf effected no change in the course of events, as the MCPS were already in the midst of procedures for placing Brian in an appropriate Level VI educational facility. Plaintiffs argue that they did "prevail" in the hearing as defined by this case law. Plaintiffs point to the hearing officer's order that Defendants "place and fund Brian immediately in a residential placement," and Plaintiffs argue that "[a]t that point, the legal relationship between the parties was clearly altered" and that "Ms. Moncrieffe had achieved the exact benefit that she sought." Plaintiffs' Reply Memorandum at 2. It is clear to the Court that the hearing officer did accept Plaintiffs' view of the situation and that in that regard his decision was in Plaintiffs' favor. However, it is also clear to the Court that the hearing officer's decision did not alter the course of Brian's placement, because the MCPS had already submitted applications to out-of-state schools at the time of the hearing, and because Brian's ultimate placement derived from one such application.

Thus, because the placement process was nearly complete at the date of the hearing, the only way in which the Court could find Brian's placement attributable to Mr. Eig's representation and request for hearing would be if the Court believed that the impending hearing somehow contributed to the process

of finding a facility for Brian, an argument not made by Plaintiff but conceivable. However, even if the Court were to accept such an argument, the Fourth Circuit has issued rulings that would bar recovery under such a theory. In *S–1 and S–2 By and Through P–1 and P–2 v. State Board of Educ. of North Carolina*, 21 F.3d 49, 51 (4th Cir.), the Fourth Circuit sitting en banc rejected the "catalyst" theory of causation in determining prevailing party status. The Court interpreted the Supreme Court's decision in *Farrar* as barring such a theory, as the Fourth Circuit held that "[t]here is no way … that *Farrar* and a broad 'catalyst theory' of attorneys' fees recovery can be reconciled." 21 F.3d at 51. In the recent case of *Statewide Reapportionment Advisory Committee v. Beasley*, 99 F.3d 134 (4th Cir.1996), the Fourth Circuit cited *S–1 and S–2* and affirmed this principle. In his concurrence, Judge Niemeyer articulated the *S–1 and S–2* rule in language most transferrable to the present case, stating that the Fourth Circuit in *S–1 and S–2* had "rejected a broad catalyst theory for awarding attorneys fees to litigants simply because their position in litigation was vindicated by an external process or sequence of events outside of the litigation." *Statewide Reapportionment Advisory Committee*, 99 F.3d at 137 (Niemeyer, J., concurring). Because the hearing itself was not a cause of Brian's placement, as the placement process was well underway at the time of the hearing, Plaintiffs are not prevailing parties under the case law standard.

For this reason, the Court will grant Defendants' Motion to Dismiss, and will deny Plaintiffs' Motion for Summary Judgment. A separate Order consistent with this Opinion will issue.

### ORDER

In accordance with the Memorandum Opinion, it is this 15th day of November, 1996, ORDERED:

1. That Defendants' Motion to Dismiss BE, and the same hereby IS, GRANTED;

2. That Plaintiffs' Motion for Summary Judgment BE, and the same hereby IS, DENIED;

3. That the Clerk of the Court CLOSE this case; and

4. That the Clerk of the Court mail copies of this Order and the Memorandum Opinion to all parties of record.