**GARLAND INDEPENDENT SCHOOL DISTRICT, et al.**

v.

**Sterling WILKS, et al.**

**No. CA3–82–470–F.**

United States District Court, N.D. Texas, Dallas Division.

April 13, 1987.

---

Earl Luna, Robert T. Martin, Dallas, Tex., for plaintiffs.

Reed Martin, Diane Shisk of Advocacy, Inc., Austin, Tex., for defendants.

## ORDER

ROBERT W. PORTER, Chief Judge.

This case is before the Court on the parties' cross-motions for summary judgment. Having reviewed the motions, the responses thereto, and the applicable law, the Court is of the opinion that judgment should be granted in part in favor of both parties, and denied in part against both parties.

There is little disagreement between the parties as to the relevant facts. Sterling Wilks has been diagnosed as being severely autistic. At ten years of age he attended school at the Cooperative Behavior Center (CBC), a facility operated by the Garland Independent School District (GISD). In this setting, he attended school during normal school hours and spent the remainder of his time at home.

Dissatisfied with the individual educational plan (IEP) developed by the GISD to meet the special needs of her son, Defendant Mrs. Wilks sought to supplement the IEP by unilaterally seeking after hours and summer educational services for Sterling. She also appealed the GISD's formulated IEP to a hearing officer, pursuant to § 615 of the Education for All Handicapped Children Act (EAHCA), 20 U.S.C. § 1415.

The hearing officer ordered residential placement for Sterling in November, 1982.

The school district filed this case, seeking review of the hearing officer's decision, as well as urging that Mrs. Wilks' parental rights be terminated. Mrs. Wilks counterclaimed on behalf of herself and Sterling, alleging that she was entitled to reimbursement for expenses incurred as a result of her supplementation of the school district's IEP, that the GISD's failure to devise a proper IEP constituted a violation of Sterling's constitutional rights, and that the filing of the instant case was an attempt by the school district to violate her right to due process of law. In August, 1983, the Wilks family moved from the GISD.

In September, 1984, the Fifth Circuit Court of Appeals vacated the order of this Court granting summary judgment on grounds of mootness in favor of GISD and remanded for further proceedings. On remand, neither party has sought to supplement the factual record, focusing instead on the application of recent case law to the facts as already established.

The most substantial issue presented by this case is whether Mrs. Wilks is entitled to reimbursement for expenses she incurred by unilaterally obtaining supplemental care for her son. GISD objects to this claim on two grounds: (1) that Mrs. Wilks' unilateral action, without consultation with the school committee charged with developing Sterling's educational program, and without specifically requesting after school care at the administrative proceeding, forecloses reimbursement; and, (2) that Mrs. Wilks failed to exhaust administrative remedies as to all of the expenses for which she seeks reimbursement. These grounds for objection will be discussed in turn.

■ First, both the United States Supreme Court and the Fifth Circuit have now established that a parent's unilateral action in obtaining supplemental or substitute care for a handicapped child in lieu of that provided by the school district under the IEP does not constitute a waiver of the right to reimbursement. *See Town of Burlington v. Department of Education*, 471 U.S. 359, 369, 105 S.Ct. 1996, 2002, 85

L.Ed.2d 385, 395 (1985); *Alamo Heights Independent School District v. State Board of Education,* 790 F.2d 1153, 1161 (5th Cir.1986). The district court's authority to fashion appropriate relief, granted by 20 U.S.C. § 1415(e)(2), permits the court "to order school authorities to reimburse parents for their expenditures on private special education if the court ultimately determines that such placement, rather than the IEP, is proper under the Act." *Town of Burlington,* 105 S.Ct. at 2002. That the substituted program is not exactly what the court ultimately finds is required likewise does not preclude reimbursement: "The rationale behind *Burlington*'s holding is that parents who elect to risk shouldering the costs of what they perceive to be a more appropriate placement, and whose judgment is wholly *or in part* vindicated by the district court, should receive more than an 'empty victory.'" *Alamo Heights,* 790 F.2d at 1161 (citing *Burlington,* 105 S.Ct. at 2003) (emphasis added).

█ Here, it is clear that Mrs. Wilks is entitled to reimbursement for some portion of her expenses in supplementing Sterling's educational program. Giving "due weight" to the decision rendered by the impartial hearing officer, *see Hendrick Hudson Board of Education v. Rowley,* 458 U.S. 176, 206, 102 S.Ct. 3034, 3050, 73 L.Ed.2d 690 (1982), it is the conclusion of this court that the IEP developed by the school district was not "reasonably calculated to enable the child to receive educational benefits." *Rowley,* 458 U.S. at 207, 102 S.Ct. at 3051. The record is replete with evidence that Sterling made little or no forward progress under the IEP developed by the school district, and in fact, his condition deteriorated when he was removed from residential placement situations and placed in the GISD's program. Although there is no single test for determining whether a handicapped child is receiving a "free appropriate education" as required by the EAHCA, see *Rowley,* 458 U.S. at 202, 102 S.Ct. at 3048, this goal is met when the child is provided "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Rowley,* at 458 U.S. at 203,

102 S.Ct. at 3049; *see generally* Comment, *Hendrick Hudson District Board of Education v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), 14 Rutgers L.J. 989 (1983).

It is undisputed that Sterling's handicap is a profound one, and that his education poses a great challenge. The EAHCA does not, however, distinguish between those children with minor disabilities and those less fortunate, who present a school district with the type of challenge raised in this case. Although the EAHCA expresses a preference for "mainstreaming" handicapped children—educating them with non-handicapped children—the Act specifically states: "[T]he nature or severity of the handicap [may be] such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(5); *see also Rowley,* 458 U.S. at 181, n. 4, 102 S.Ct. at 3037, n. 4. Here, the hearing officer specifically found that Sterling made little, if any progress while in the GISD program, *see* Finding of Fact # 4, *Decision of the Hearing Officer,* p. 10, and in fact, regressed in certain areas of behavior. *See* Finding of Fact # 9, *Decision of the Hearing Officer,* p. 15 ("There is substantial evidence indicating that Sterling's tenure at the CBC has been marked by steadily deteriorating behaviors coupled with the increased use of physical restraints by which to control his escalating aggressive and self-abusive behaviors."). In this case, a proper IEP would have provided for extensive training and monitoring of Sterling on a twenty-four hour per day basis. That was the conclusion of the impartial hearing officer, and that is the conclusion adopted by this Court. Mrs. Wilks, in obtaining additional help beyond that provided by the school district under the IEP, recognized that Sterling needed a more comprehensive program. That the services she obtained were not precisely what was ultimately determined appropriate is of no consequence in this case. The record supports the conclusions that Mrs. Wilks could not afford continuous residential placement. The services she obtained were intended by her to

accomplish, within the bounds imposed by her financial situation, as close a facsimile of residential placement as possible. She should not, at this juncture, be faced with an "empty victory" because she possessed insufficient means to give her son the education she sought for him from the school district.

Plaintiff school district argues that the hearing officer's findings and conclusions are not entitled to deference by this court because they pre-date the Supreme Court's decision in *Rowley*, which adopted a lower standard under the Act than had been utilized previously. A review of the hearing officer's decision leads to the inevitable conclusion, however, that it is entirely consistent with *Rowley:*

> In order to benefit from his education, Sterling requires an intensive, residential program of behavior modification and total communications which is implemented with a high degree of consistency throughout his waking hours, and in all settings. This program must be continuous throughout the calendar year, until his severe behaviors are eliminated.

Conclusion of Law # I, *Decision of the Hearing Officer*, p. 24. Throughout the decision of the hearing officer, numerous references emphasize that residential placement is not the *best* educational option for Sterling; rather, residential placement is the *only* option which will result in Sterling receiving any educational benefits. The hearing officer's decision is as viable now under *Rowley* as it was under pre-*Rowley* case law.

■ Although Mrs. Wilks is entitled to reimbursement for that portion of her expenses incurred while she struggled with the school district to get residential placement for Sterling, the school district is correct in asserting that expenses incurred prior to her challenge of the IEP cannot be recovered. Mrs. Wilks seeks recovery for four private expense episodes: (1) the cost of Sterling's enrollment at the Lynne Developmental Center in the Fall of 1979; (2) the cost of hospitalization in 1980; (3) the cost of a five day evaluation at the Texas Research Institute for Mental Sciences

(TRIMS); and, (4) the cost of obtaining the after school and full-time summer services of Mr. Cox in May, 1982 through November 1982. Information obtained from the five day evaluation at TRIMS prompted Mrs. Wilks to then challenge Sterling's IEP, formulated by the school district's Admission Review and Dismissal Committee (ARD). Mrs. Wilks' failure to seek review of the school board's IEP prior to this time constitutes a waiver of her right to reimbursement for the earlier private expense episodes. She cannot, in fairness, expect to recover for expenses she incurred *prior* to contacting the school board about her dissatisfaction with Sterling's IEP.

Mrs. Wilks sought placement for Sterling in a twenty-four hour a day, twelve month residential program. The ARD declined to implement this program, choosing instead to keep Sterling in his existing program. That program included specific learning goals, self-help goals, and a behavior modification program intended to correct Sterling's aggressive and self-abusive behavior, and was supplemented by support services from a speech therapist and an occupational therapist. The program also included transportation services for Sterling, and counseling services for Mrs. Wilks. Still believing that Sterling needed more comprehensive training, Mrs. Wilks then challenged the IEP at an impartial hearing pursuant to § 615 of the EACHA, 20 U.S.C. § 1415.

Under the Act, great emphasis is placed on the procedures by which both parents and school districts are to work together to reach solutions to this type of problem:

> It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures giving parents a large measure of participation at every stage of the administrative process, *see, e.g.,* §§ 1415(a)–(d), as it did upon the measurement of the resulting IEP against a substantive standard.... [This] demonstrates the legislative conviction that adequate compliance with the procedures prescribed would in most cases assure much if not

all of what Congress wished in the way of substantive content in the IEP.

*Rowley,* 458 U.S. at 206, 102 S.Ct. at 3050; *see also Quackenbush v. Johnson City School District,* 716 F.2d 141, 147 (2d Cir. 1983), *cert. denied,* 465 U.S. 1071, 104 S.Ct. 1426, 79 L.Ed.2d 750 (1984) ("[C]ompliance with these procedural safeguards is an essential step in achieving the statutory goal of a free appropriate public education.") While in *Rowley* and *Quackenbush* the specific inquiry was directed to whether the school district—and not the parent—complied with the procedures set out under the Act, the burden of compliance with these procedures falls equally on parents as well as school districts. In *Quackenbush,* the court specifically found that the parents, who through the misdirection of school officials had not pursued administrative remedies, did not qualify as parties "aggrieved by the findings and decision" following an impartial hearing. *See Quackenbush,* 716 F.2d at 147; see also 20 U.S.C. § 1415. Because the court did not find the parents to be "parties aggrieved by the findings and decision" at the administrative level, the parents could not, under the EAHCA, then seek judicial review of the administrative proceeding. *See Quackenbush,* 716 F.2d at 147.

Because Mrs. Wilks did not complain of Sterling's placement prior to the September 18, 1981 ARD Committee decision, she cannot now seek reimbursement for the prior private expense episodes; there were, in fact, no findings or decisions regarding Sterling's IEP prior to the hearing requested in 1981. If Mrs. Wilks had complained of Sterling's placement previously, it is possible (though, given the complete history of this case, not likely) that the ARD Committee may have been responsive to her suggestions, thus alleviating the necessity for private expenditure. Because Mrs. Wilks did not take advantage of the procedural mechanisms available to her, it is impossible to determine with any certainty whether those expenditures were indeed necessary, or whether a prompt complaint by Mrs. Wilks might have obviated the need for those expenditures. For this reason, district courts have no jurisdiction over claims which have not been first raised within the specified procedural mechanisms. *See, e.g., Doe v. Anrig,* 500 F.Supp. 802, 804 (D.Mass.1980), *aff'd in pertinent part,* 692 F.2d 800 (1st Cir.1982) (district court found no subject matter jurisdiction over parents' claims where no administrative review had been sought of the school board's decision). For this reason, it is impossible to reimburse Mrs. Wilks for her private expenses incurred prior to 1981.

Mrs. Wilks also asserts a claim under § 504 of the Rehabilitation Act of 1973, which provides, in pertinent part:

No otherwise qualified handicapped individual, ..., shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794. She specifically alleges that the school district had a policy against residential placement of handicapped students, and that this was the primary reason why Sterling's IEP provided for programming only during school hours for nine or ten months of the year.

In support of her contention, Mrs. Wilks offers the statement of Sharla Howey, who was employed by the school district as Center Leader for the CBC. Ms. Howey stated that she disagreed with the IEP as formulated by the ARD Committee, but did not express this disagreement to the Committee because she "perceived" the GISD to have a policy against residential placement and felt it was her "responsibility to advocate for the school district's point of view." *See* Record at 431. Mrs. Wilks also relies on the school district's failure to advise residential placement for Sterling as evidence of the DISD's discriminatory policies. Although an issue is raised as to the validity of Ms. Howey's statement, which purports to be sworn but is not notarized, even assuming her statement may properly be considered by this Court, this evidence is not persuasive on this issue. Ms. Howey

does not say she was ever told of this policy by any specific individual or that this alleged policy was shown to her in writing. At best, her statement is merely a conclusion based on facts which are not in evidence; at worst, it is rank speculation. Her statement, coupled with the IEP formulated by the school board for Sterling, is not sufficient evidence to satisfy Mrs. Wilks' burden of proof on this issue. This is particularly true in light of the testimony of school board members and employees to the contrary.

The facts here simply do not support a finding in favor of Mrs. Wilks on this issue. While both the hearing officer and this Court conclude that the IEP developed by the school board was improper, there is no persuasive evidence that the actions of the school board were deliberately taken or were founded upon a discriminatory animus. So long as a good faith effort was made to formulate a proper IEP for Sterling, the fact that there may have been misjudgment on the part of the ARD Committee or the school board will not trigger recovery of damages, whether under the EAHCA, or under § 504 as made available pursuant to the Handicapped Children's Protection Act of 1986. *See Gerasimou by Gerasimou v. Ambach,* 636 F.Supp. 1504, 1511–12 (E.D.N.Y.1986). Nothing in the Handicapped Children's Protection Act alters the construction of § 504 that "there can be no private right of action under Title VI for damages absent intentional discrimination." *See Marvin H. v. Austin Independent School District,* 714 F.2d 1348, 1357 (5th Cir.1983); *see also Guardians Association v. Civil Service Commission of the City of New York,* 463 U.S. 582, 607 n. 27, 103 S.Ct. 3221, 3235 n. 27, 77 L.Ed.2d 866 (1983) ("[N]o compensatory relief should be awarded [under § 504] if discriminatory animus is not shown.") As stated by the Eighth Circuit Court of Appeals, discrimination under § 504,

> must require, ..., something *more than an incorrect evaluation, or a substantively faulty individualized education plan, in order for liability to exist.* Experts often disagree on what the special needs of a handicapped child are, and the

educational placement of such children is often an arguable matter. That a court may, after hearing evidence and argument, come to the conclusion that an incorrect evaluation has been made, and that a different placement must be required under EAHCA, is not necessarily the same thing as holding that a handicapped child has been discriminated against solely by reason of his or her handicap. *An evaluation, in other words, is not discriminatory merely because a court would have evaluated the child differently.*

> We do not read § 504 as creating general tort liability for educational malpractice....

*Monahan v. State of Nebraska,* 687 F.2d 1164, 1170 (8th Cir.1982), *cert. denied,* 460 U.S. 1012, 103 S.Ct. 1252, 75 L.Ed.2d 481 (1983) (emphasis added). To impose damage liability on the school district in this case would be tantamount to imposing educational malpractice liability. This is not the problem § 504 is intended to address. Because the Court denies Mrs. Wilks' claim under § 504, there is no need to address her claim for attorney's fees under § 505 of the Act.

Mrs. Wilks also brings a claim under 42 U.S.C. § 1983 for alleged violations of rights guaranteed by the Eighth and Fourteenth Amendments. She claims that restraints used by school teachers and staff when Sterling manifested aggressive or self-abusive behavior constituted cruel and unusual punishment in violation of the Eighth Amendment. She further claims that this punishment was imposed without due process of law, as provided by the Fourteenth Amendment.

In *Ingraham v. Wright,* the United States Supreme Court considered two issues: whether corporal punishment at school as a disciplinary method constitutes an Eighth Amendment violation, and, if not, whether due process requires prior notice and an opportunity to be heard on the corporal punishment issue? 430 U.S. 651, 654, 97 S.Ct. 1401, 1403, 51 L.Ed.2d 711 (1977). The Court ruled that the Eighth Amendment "does not apply to the

paddling of children as a means of maintaining discipline in public schools," and noted its adherence to the "longstanding" limitation of Eighth Amendment application in the criminal context only. *See Ingraham*, 430 U.S. at 664, 97 S.Ct. at 1408. The Court further stated that corporal punishment which is excessive may result in both civil and criminal liability, and although corporal punishment does give rise to a constitutionally protected liberty interest, "the traditional common-law remedies are fully adequate to afford due process." *Ingraham*, 430 U.S. at 672, 97 S.Ct. at 1413. Clearly, damages for Eighth Amendment or due process violations, in light of *Ingraham* and its progeny, are available only in exceptional circumstances.

■ The record in this case fully establishes that Sterling did indeed exhibit aggressive and self-abusive behavior. There is no evidence, however, that the reactions of GISD employees to Sterling's behavior were excessive in any way. Mrs. Wilks herself concedes that Sterling was not mistreated by the teachers and staff of the school district. *See* Transcript of Administrative Hearing, Vol. 1, p. 134. If damages for Eighth Amendment violations are available in this context, it is the opinion of this Court that the facts in this case do not give rise to a constitutional violation.

Mrs. Wilks also seeks to impose liability against a number of individual employees or agents of the school district under 42 U.S.C. § 1983, arguing that they deliberately refused to consider any residential placement for Sterling. This refusal, it is argued, was intended to—and did—deprive Sterling of his constitutional right to a free appropriate education.

The named individuals raise the defense of qualified immunity. While under *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), an official has no qualified immunity when he or she has violated "clearly established statutory or constitutional rights of which a reasonable person would have known," there is no evidence of this type of willful violation in this case. Because all parties to this action have indicated satisfaction

with the factual development of this case, the Court can properly dispose of all claims raised on the basis of the instant motions. As stated previously, there is no evidence before the Court which establishes a deliberate intent on the part of the school district to deprive Sterling of an appropriate education. Likewise, there is no evidence that any particular individual harbored any such intent. Accordingly, Mrs. Wilks' claim for damages against the named individuals, as well as against the School District and CBC, on the basis of alleged violations of § 1983 must be denied as having no basis in the facts before this Court.

■ Finally, Mrs. Wilks seeks a declaratory judgment and injunctive relief against the school district. It is uncontroverted that Mrs. Wilks and her family no longer reside within the boundary of the GISD. Her claims for injunctive relief are, therefore, moot. Further, although it is not entirely clear what is sought by way of declaratory judgment, it is within the sound discretion of the district court whether to decide a declaratory judgment action. *See Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir.1983); *see also Nat'l Wild Life Federation v. United States*, 626 F.2d 917, 923 (D.C.Cir.1980) (It is well established that language of the Declaratory Judgment Act "is intended to permit the court in its discretion to withhold relief.") Nothing in the record before this Court suggests a need for a declaration of rights as between the parties. Although the GISD's initial complaint did suggest that a termination of parental rights might be appropriate in this case if it were determined that Mrs. Wilks did not wish to maintain responsibility for basic childrearing and custodial duties, this claim has not been seriously pursued by the school district. Further, this claim was never seriously considered by the Court. Declaratory judgment on this or any other issue raised here is simply unnecessary.

■ It is undisputed that, under the existing law, a prevailing party in a case brought under the EAHCA is entitled to recover attorney's fees. Although it is far from clear to what extent Mrs. Wilks is a

prevailing party in this case, she is entitled to recover attorney's fees incurred in defending this action, and in seeking reimbursement for private expenses incurred during and after 1981. Award of attorneys fees is in the Court's discretion, and, upon receipt of proper evidence in support of Mrs. Wilks claim, a determination will be made as to the precise amount recoverable.

For the reasons stated above, it is the judgment of this Court that Mrs. Wilks is entitled to reimbursement for her private expenses incurred during and after 1981, and attorney's fees which correspond to recovery of those expenses. All other relief not specifically discussed in this opinion is denied to all parties. Attorneys for Mrs. Wilks are directed to submit a form of judgment for the Court's signature, and evidence supporting both the reimbursement claim and an appropriate award of attorneys' fees within fifteen (15) days of the date of this order. Any challenge to the evidence on reimbursement or attorneys' fees shall be filed within ten (10) calendar days of the date the evidence is filed. The parties are advised that agreement on the proper amounts recoverable would be greatly appreciated by the Court.