**IVAN P., parent & next friend of Lukas P., a minor child,**

v.

**WESTPORT BOARD OF EDUCATION, et al.**

**Civ. No. 3:93CV905 (AHN).**

United States District Court, D. Connecticut.

Sept. 23, 1994.

Carrol L. Lucht, Jerome Frank Legal Services Org., Yale Law School, New Haven, CT, for plaintiff.

Martha M. Watts, Atty. General's Office, Hartford, CT and Andrew S. Turret, Bia Pollock & Dunnigan, Bridgeport, CT, for defendants.

### RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

NEVAS, District Judge.

Plaintiff, Ivan P., brings this action against the Westport Board of Education ("Westport Board"), the Connecticut State Board of Education ("State Board") and the Connecticut State Department of Education ("State Department of Education") (collectively "defendants"), on behalf of his minor son, Lukas P. ("Lukas"), pursuant to the Individuals With Disabilities Education Act, 20 U.S.C.A. §§ 1400–85. (West 1990 & Supp.1994) ("IDEA").

Currently pending before the court are cross motions for summary judgment. For the reasons that follow, the plaintiffs' motion for summary judgment [doc. # 12] is GRANTED, the Westport Board's motion for summary judgment [doc. # 17] is DENIED, and the joint motion by the State Board and State Department of Education [doc. # 20] is DENIED.

### STANDARD

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). A court must grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact....' " *Miner v. Glen Falls*, 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510), *cert. denied*, —— U.S. ——, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary

judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich,* 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). *See also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992).

## BACKGROUND

Keeping this standard in mind, the court finds the following facts to be undisputed.[1]

Lukas was born on June 15, 1988. He qualified for services under the IDEA beginning with the 1991–92 school year. Prior to the fall of 1991, the Westport Board evaluated Lukas in order to develop an Individualized Education Program ("IEP") for him. On May 25, 1991, the Westport Board presented the plaintiffs with a draft IEP for the 1991–92 school year. On May 30, 1991, Keith Bardos, then the plaintiffs' attorney, wrote to the Westport Board rejecting the proposed placement because the plaintiffs believed it was unsuitable for Lukas. The plaintiffs subsequently placed Lukas in the Foundation School at their own expense and he remained there through the summer of 1993.

On December 6, 1991, the plaintiffs' present counsel wrote to the Westport Board advising it that the plaintiffs were seeking funding for Lukas's placement at the Foundation School. The letter also requested that a meeting be held to discuss Lukas's program and to arrange for an independent evaluation.

Correspondence between the plaintiffs and the Westport Board continued through April, 1992. On April 24, 1992, the Westport Board met with the plaintiffs and presented them with a draft IEP for the 1992–93 year. The plaintiffs rejected the proposed placement on May 7, 1993, and, on the following day, the plaintiffs' counsel requested a due process hearing to seek reimbursement for the costs of Lukas's placement at the Foundation School during the 1991–92 school year and for his continued placement there in 1992–93.

A due process hearing was held, at the conclusion of which the administrative hearing officer found that the program proposed by the Westport Board for the 1991–92 school year was inappropriate and that Lukas's placement with the Foundation School for the 1991–92 school year was appropriate. The hearing officer also concluded, however, that the program offered to Lukas by the Westport Board for the 1992–93 school year was appropriate. The hearing officer ordered the Westport Board to reimburse the plaintiffs for the costs of placement at the Foundation School from May 8, 1992, the date on which Lukas's parents requested the due process hearing, through the end of the 1992 summer session. The hearing officer cited section 10–76d(e)(1) of the Connecticut General Statutes as permitting a special education hearing officer to order reimbursement "back to the date of the initiation of the request for due process review."

## DISCUSSION

### A. Connecticut General Statutes Section 10–76d(e)(1)

Pursuant to 20 U.S.C.A. § 1415(e)(2), the plaintiffs seek judicial review of the administrative hearing officer's order that they be reimbursed only for those special education expenses they incurred after May 8, 1993, the date on which they requested a due process hearing,[2] rather than from the date on which they placed Lukas at the Foundation School. In so doing, the plaintiffs challenge the constitutionality of section 10–76d(e)(1) of the Connecticut General Statutes

---

1. The court sets forth only those facts that are material to the disposition of the legal issues presented.

2. 20 U.S.C.A. § 1415(b)(2) provides in relevant part: "Whenever a complaint has been received . . . the parents or guardian shall have the opportunity for an impartial due process hearing which shall be conducted by the State educational agency or by the local educational agency. . . ." 20 U.S.C.A. § 1415(b)(2) (West 1990 & Supp.1994).

("section 10–76d(e)(1)"), pursuant to which the hearing officer limited the reimbursement award.

Section 10–76d(e)(1) provides in relevant part:

> If a hearing board ... rejects the educational program prescribed by the local or regional board of education and determines that a placement by a parent or guardian was appropriate, the local or regional board of education shall reimburse the parent or guardian for the reasonable costs incurred for the provision of special education pursuant to this section from the initiation of review procedures as provided by ... section 10–76h.

Conn.Gen.Stat.Ann. § 10–76d(e)(1) (West 1986 & Supp.1994).

The plaintiffs and the defendants agree in one respect: each takes the position that section 10–76d(e)(1) limits a hearing officer's discretion to award reimbursement by permitting reimbursement only from the date on which a parent or guardian requests review of his or her child's placement, rather than from the date on which the placement itself commenced. They disagree, however, as to the legal consequences of interpreting section 10–76d(e)(1) in this way. The plaintiffs argue that section 10–76d(e)(1) impermissibly restricts the remedies authorized by section 1415(e)(2) of the IDEA, which empowers a court to "grant such relief as the court determines is appropriate," and is therefore inconsistent with and preempted by the IDEA. The defendants contend that section 10–76d(e)(1)'s limitation on reimbursement is consistent with the IDEA and therefore reject the proposition that the state law is subject to preemption.

■ The court disagrees with the reading of section 10–76d(e)(1) urged by both the plaintiffs and the defendants, as it finds nothing in that section to prohibit a hearing officer from awarding *greater* reimbursement than the minimum prescribed. Section 10–76d(e)(1) provides that reimbursement "from the initiation of review procedures" *"shall"* be awarded. Conn.Gen.Stat.Ann. § 10–76d(e)(1). Thus, the statute by its own terms makes partial reimbursement mandatory. If parents demonstrate that the educational placement the school board proposed for their child was inappropriate and that their placement was appropriate, section 10–76d(e)(1) entitles them to reimbursement running from the date on which they request review of the school board's placement. Under such circumstances, a hearing officer cannot decline to award reimbursement for the period commencing with the date on which the parents' initiated review procedures. It would also be entirely consistent with the terms of section 10–76d(e)(1), however, for a hearing officer to award additional reimbursement, including reimbursement commencing from the date on which the placement itself began.

■ This reading of the statute is the most obvious.[3] "The starting point for interpreting a statute is the language of the statute itself." *United States v. Piervinanzi*, 23 F.3d 670, 677 (2d Cir.1994) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)), *petition for cert. filed* Aug. 1, 1994. Both the plaintiffs and the defendants acknowledged at oral argument that the court's reading of section 10–76d(e)(1) is supported by the language of that section. (*See also* Def. Brief, doc. # 18, at 11 n. 3 (noting that section 10–76d(e)(1) requires partial reimbursement and "does not specifically prevent the hearing officer from using his discretion to provide additional reimbursement").) A literal interpretation of section 10–76d(e)(1) supports the conclusion that a hearing officer is not required to, but may choose to, award additional reimbursement. By contrast, the plaintiffs and defendants read into section 10–76d(e)(1) a limitation that does not appear in its express terms. Moreover, the court has been offered no justification for looking beyond the statute's

---

**3.** The court notes that the record does not reflect whether it is the practice of all administrative hearing officers awarding reimbursement pursuant to section 10–76d(e)(1) to limit reimbursement to the date on which review procedures are initiated. Nor does the record reflect how often parents delay seeking administrative review and are thus in the position of seeking reimbursement for the period between the placement and the initiation of review proceedings.

text. Indeed, it is only when the express language is ambiguous or where there is contrary legislative intent, that a court is permitted to stray from a statute's terms. *O'Connell v. Hove*, 22 F.3d 463, 470 (2d Cir.1994) ("only the most extraordinary showing of a contrary intention from the legislative history would justify interpretive departure from a statute's plain language") (citations omitted). Neither party asserts that the terms of section 10–76d(e)(1) are ambiguous, and each has represented that no relevant legislative history is available.

■ Nor is there any indication in the present record that adherence to the terms of section 10–76d(e)(1) would contravene the larger purposes of either the state statutory scheme or the IDEA. *See, e.g., Grand Light & Supply Co. v. Honeywell, Inc.*, 771 F.2d 672, 677 (2d Cir.1985) ("[W]here the result of a literal interpretation of statutory language is absurd, or where the obvious purpose of the statute is thwarted by slavish adherence to its terms, we may look beyond the plain language.") (citations omitted). The defendants maintain that to allow a hearing officer to award reimbursement commencing from the date of placement, is to undermine the IDEA's policy of encouraging parents to seek prompt administrative review. The defendants are correct that the procedural requirements established by the IDEA are integral to accomplishing the aims of the federal legislation and are to be duly observed. *See, e.g., Board of Educ. v. Rowley*, 458 U.S. 176, 205, 102 S.Ct. 3034, 3050, 73 L.Ed.2d 690 (1982) ("When the elaborate and highly specific procedural safeguards embodied in § 1415 [of the IDEA] are contrasted with the general and somewhat imprecise substantive admonitions contained in the Act, we think that the importance Congress attached to these procedural safeguards cannot be gainsaid."). The court's construction of section 10–76d(e)(1), however, is consistent with the IDEA's goal of ensuring timely review of a child's proposed educational placement. Indeed, to the extent that section 10–76d(e)(1) *mandates* reimbursement from the date on which due process review is initiated, it may well encourage parents to seek prompt review of their child's placement to ensure that they are fully reimbursed. Moreover, a hearing officer is free to consider parents' delay in seeking administrative review when he or she determines whether to award additional reimbursement.

■ Finally, the court is mindful of its obligation to interpret state law so as to avoid constitutional conflicts if such an interpretation is otherwise appropriate. *See, e.g., Harrison & Burrowes Bridge Constr., Inc. v. Cuomo*, 981 F.2d 50, 60 (2d Cir.1992) ("[S]tatutes must be construed so as to avoid constitutional difficulties whenever possible." (citations omitted)). In concluding that section 10–76d(e)(1) circumscribes a hearing officer's authority only insofar as it sets a minimum requirement for reimbursement, not a maximum, the court adopts an interpretation of that section that is supported by the language of the statute itself and diminishes the Supremacy Clause concerns posed by the plaintiffs' and defendants' interpretation.

## B. Preemption

The court now considers whether, in light of its interpretation of section 10–76d(e)(1), that section is contrary to 20 U.S.C.A. § 1415(e)(2) and is therefore subject to preemption.

■ Under the Supremacy Clause of the United States Constitution, state laws that are contrary to federal law are invalid. *See* U.S. Const. art. VI, cl. 2. Federal preemption may occur in one of three ways. First, Congress can preempt state law expressly, by so stating in explicit terms on the face of a statute. *Motor Vehicle Mfrs. Assoc. of the United States, Inc. v. Abrams*, 899 F.2d 1315, 1318 (2d Cir.1990) (citations omitted), *cert. denied*, 499 U.S. 912, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991). Second, in the absence of an express statement Congress may preempt state law when it intends that federal law occupy a given field. *Id.* (citations omitted). Third, even if Congress does not expressly preempt or intend to occupy the field, a state law is nevertheless preempted if it actually conflicts with federal law; that is, when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objec-

tives of Congress. *Id.* at 1318–19 (citations omitted).

The plaintiffs make three arguments in support of the contention that section 10–76d(e)(1) is preempted by the IDEA, all of which appear to be arguments in support of the proposition that section 10–76d(e)(1) "actually conflicts" with the IDEA. Those arguments are as follows:

First, by limiting the remedy to only partial reimbursement, the statute denies children with disabilities the right to a free appropriate education. . . . Second, by mechanically limiting the remedy of reimbursement to a particular time period, the statute removes from the courts the broad discretion explicitly assigned to them by [the] IDEA. Finally, the concept of equitable relief for a federally-created right eschews the rigidity inherent in the application of a fixed accrual statute.

(Pl. Brief, doc. #13, at 9.)

Given the court's interpretation of section 10–76d(e)(1), the court easily disposes of the plaintiffs' first argument. According to the court's reading of section 10–76d(e)(1), a hearing officer may award additional reimbursement in the appropriate case without contravening that section. Thus, section 10–76d(e)(1) does not limit the remedies available to IDEA plaintiffs by automatically limiting reimbursement.

The plaintiffs' second argument is similarly unavailing. As the defendants point out, section 10–76d(e)(1) addresses the time period for which a *hearing officer* "shall" award reimbursement, and does not address, let alone limit, *judicial* authority. In addition, the court has found that section 10–76d(e) does not mechanically *limit* reimbursement to a particular time period, as a hearing officer may choose to award greater reimbursement than that mandated by the statute.

The plaintiffs' third argument, however, gives the court pause. The court has found that section 10–76d(e)(1) does comprise a mandate to award partial reimbursement, and the plaintiffs seem to take the position that *any* mandate is antithetical to the flexible remedial scheme envisioned by the IDEA.[4] The plaintiffs' argument raises, at least implicitly, the question of whether section 10–76d(e)(1) is inconsistent with the IDEA because it requires a hearing officer to award partial reimbursement when the necessary preconditions are met and does not allow a hearing officer to award less reimbursement or deny reimbursement altogether. Put differently, if a judge fashioning relief pursuant to 20 U.S.C.A. § 1415(e)(2) is free, in the exercise of his or her discretion, to deny all reimbursement in the appropriate case, is section 10–76d(e)(1)'s restriction on a hearing officer's authority to deny all reimbursement inimical to the broad discretion intended by the IDEA?

The court answers this question in the negative. Although section 10–76d(e)(1) does direct a hearing officer to award a minimum level of reimbursement, this arguable limit on discretion does not warrant a finding of preemption. In particular, the court concurs with the defendants' assertion that the state law is more stringent than the IDEA because section 10–76d(e)(1) requires partial reimbursement and permits additional reimbursement. 20 U.S.C.A. § 1415(e)(2), by contrast, simply authorizes "such relief as . . . appropriate" and does not expressly require that any reimbursement be awarded. Where a state law is more stringent than a federal law the two are consistent and the state law is not subject to federal preemption. *Evans v. Evans*, 818 F.Supp. 1215, 1223 (N.D.Ind. 1993) ("[The] IDEA does not preempt state law if the state standards meet the minimum federal guidelines."); *Antkowiak v. Ambach*, 838 F.2d 635, 641 (2d Cir.1988) ("While state

4. The plaintiffs take this position when they contend that the IDEA "eschews the rigidity inherent in the application of a fixed accrual statute." (Pl. Brief, doc. #13, at 9.) Yet, they also state that the Supreme Court in *Town of Burlington v. Department of Educ.*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), interpreted the IDEA as *requiring* reimbursement. (*Id.* at 7.) If, in fact, the only posture consistent with 20 U.S.C.A. § 1415(e)(2) is one that rejects *all* mandates, then one could argue that to mandate reimbursement, partial or full, would also be inconsistent with the broad discretion 20 U.S.C.A. § 1415(e)(2) affords to judges fashioning equitable relief.

procedures which more stringently protect the rights of the handicapped and their parents are consistent with the EHA [now IDEA] and thus enforceable, those that merely add additional steps not contemplated in the scheme of the Act are not enforceable." (citations omitted)), *cert. denied*, 488 U.S. 850, 109 S.Ct. 133, 102 L.Ed.2d 105 (1988). Neither does the court find that section 10–76d(e)(1) "obstructs [or interferes with] the delicately crafted federal regime," *Modeste v. Local 1199, Drug, Hosp. & Health Care Employees Union*, 850 F.Supp. 1156, 1161 (S.D.N.Y.1994) (quoting *Medical Soc'y of New York v. Cuomo*, 976 F.2d 812, 820 (2d Cir.1992)), or "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 605, 111 S.Ct. 2476, 2482, 115 L.Ed.2d 532 (1991) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67–68, 61 S.Ct. 399, 404–05, 85 L.Ed. 581 (1941)).

The court is aware that some courts have held that an administrative hearing officer's authority to award equitable relief is coextensive with that of courts acting pursuant to 20 U.S.C.A. § 1415(e)(2). *See Cocores v. Portsmouth, N.H. Sch. Dist.*, 779 F.Supp. 203, 205–06 (D.N.H.1991) (finding that hearing officer has authority to award compensatory education and that a "hearing officer's ability to award relief must be coextensive with that of the court"); *S–1 v. Spangler*, 650 F.Supp. 1427, 1431–33 (M.D.N.C.1986) (state's refusal to allow hearing officers to order reimbursement where appropriate falls below the minimal procedural protections of the EHA), *vacated on other grounds*, 832 F.2d 294 (4th Cir.1987), *see also* Policy letter issued by Department of Education, Office of Special Education and Rehabilitation Services, June 17, 1994 (stating that hearing officers have the authority to award the same forms of relief available to plaintiffs under 20 U.S.C.A. § 1415(e)(2), including reimbursement). Yet, while it is logical to infer that a hearing officer should have the same equitable discretion as the district court, the court is not persuaded that section 10–76d(e)(1) is contrary to the IDEA because it does not permit hearing officers to deny reimbursement, or that such a limitation constitutes a basis for concluding that the IDEA preempts section 10–76d(e)(1).

Moreover, the court notes that it is not clear whether it would be within the discretion of a judge acting pursuant to 20 U.S.C.A. § 1415(e)(2) to deny reimbursement to parents whose placement, rather than a proposed IEP, is deemed to be appropriate. The Supreme Court in *Burlington* wrote that to deny parents reimbursement under these circumstances would mean that "the child's right to a *free* appropriate public education, the parents' right to participate fully in developing a proper IEP, and all of the procedural safeguards would be less than complete." *Town of Burlington v. Department of Educ.*, 471 U.S. 359, 370, 105 S.Ct. 1996, 2003, 85 L.Ed.2d 385 (1985). Yet *Burlington* also refers to reimbursement as "an available remedy," and does not explicitly indicate that reimbursement is ever mandatory. In *Florence County Sch. Dist. v. Carter*, the Supreme Court stated that courts must determine "the appropriate and reasonable level of reimbursement that should be required," *Florence County Sch. Dist. v. Carter*, —— U.S. ——, ——, 114 S.Ct. 361, 366, 126 L.Ed.2d 284 (1993), implying that where the preconditions are met, *some* reimbursement is required. It certainly cannot be said that section 10–76d(e)(1) sets a lower standard than that set by federal law, and given that it is at least arguable that in mandating partial reimbursement section 10–76d(e)(1) brings Connecticut into *compliance* with federal law, the court will not find that the attendant limit on discretion warrants a finding of preemption.

In sum, by mandating partial reimbursement, allowing for total reimbursement and precluding denial of reimbursement, the state law is more stringent than section 1415(e)(2) of the IDEA and is thus enforceable.

## C. Review of the Hearing Officer's Reimbursement Award

■ The plaintiffs seek an order compelling the Westport Board to reimburse them for all of the educational and transportation expenses they incurred from the time that they placed Lukas in the Foundation School

in 1991, through the summer session of 1992, without regard for the date on which the due process hearing was requested. The court therefore must decide whether the plaintiffs are entitled to greater reimbursement than that ordered by the hearing officer. "The determination of whether reimbursement is appropriate, and in what amount, 'should be determined by balancing the equities of the particular case.'" *Jefferson County Bd. of Educ. v. Breen*, 694 F.Supp. 1539, 1541 (N.D.Ala.1987) (quoting *Jenkins v. Florida*, 815 F.2d 629, 630–31 (11th Cir.1987)). In evaluating whether Lukas's parents should be reimbursed for the period pre-dating their request for due process review, the court must consider all relevant factors. *See Florence County*, —— U.S. at ——, 114 S.Ct. at 366 ("Courts fashioning discretionary equitable relief under IDEA must consider all relevant factors, including the appropriate and reasonable level of reimbursement that should be required."). Among these factors are the effort expended by the parents in securing an alternate placement and the "cooperative or uncooperative position of the School District itself," *Alamo Heights Indep. Sch. Dist. v. State Bd. of Educ.*, 790 F.2d 1153, 1161 (5th Cir.1986), as well as whether the parents failed to consult with school officials or sought to negotiate a mutually agreeable arrangement with them. *See Murphy v. Timberlane Regional Sch. Dist.*, 973 F.2d 13, 16 (1st Cir.1992) (finding disputed issues of fact precluded summary judgment as to whether parents' delay in filing claim for compensatory education under IDEA was reasonable where parents "were not sitting on their rights, but were attempting to resolve their differences with the school district without resorting to litigation"), *aff'd on appeal following remand*, 22 F.3d 1186 (1994); *Town of Burlington v. Department of Educ.*, 736 F.2d 773, 799 (1st Cir.1984), *aff'd*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). Also relevant is whether the school district has had an opportunity to evaluate the child and recommend a program. *See Ash v. Lake Oswego Sch. Dist., No. 7J*, 980 F.2d 585, 589 (9th Cir.1992).

The defendants rely on several cases for the proposition that full reimbursement should not be awarded where parents do not promptly request a due process hearing. *See Ash*, 980 F.2d 585; *Garland Indep. Sch. Dist. v. Wilks*, 657 F.Supp. 1163 (N.D.Tex. 1987); *Gillette v. Fairland*, 725 F.Supp. 343 (S.D.Ohio 1989); *Hunter v. Seattle Sch. Dist., No. 1*, 46 Wash.App. 523, 731 P.2d 19 (1987). The court finds no suggestion in these cases that the date of the formal request for a due process hearing is necessarily the date from which to calculate reimbursement. In addition, all four cases are factually distinguishable from the present case because they involved parents who failed to report their dissatisfaction with their child's education to the school board. Indeed, *Ash, Garland* and *Hunter* addressed situations where the school board had not even been given the opportunity to evaluate the child and propose a placement. Under those circumstances, the respective courts found that it would not be equitable to require the school board to pay the child's special education expenses. *See Ash*, 980 F.2d at 589 (affirming as appropriate date for accrual of reimbursement, the date the school district was first asked to provide services for the child and had been given a reasonable opportunity to evaluate him and recommend a placement); *Garland*, 657 F.Supp. at 1167 (stating that parent "cannot, in fairness, expect to recover for expenses she incurred *prior* to contacting the school board about her dissatisfaction with [her child's] IEP."); *Hunter*, 731 P.2d at 21–22 ("District assessment met by parental disagreement . . . is an essential element in the right to reimbursement under the EAHCA [now IDEA].").

The Westport Board argues that "[t]he plaintiffs had the ability to request a due process hearing in May 1991. They could simply have added a note to their rejection of Lukas' [sic] IEP to the Board stating a request for a due process hearing. Lukas' [sic] parents would thus have invoked the protections guaranteed them under the IDEA. . . ." (Def. Brief, doc. # 18. at 21–22.) The court reiterates its appreciation of the importance the IDEA places on compliance with its procedural safeguards, but it is nevertheless convinced that the plaintiffs' failure to request a due process hearing in so many words does not deprive Lukas of his right to

a free and appropriate education under the IDEA. It is communication and cooperation between parents and school boards that the IDEA seeks to foster through its procedural mechanisms. The record in this case reflects significant efforts at communication between the plaintiffs and the Westport Board, such that it would inequitable to deny the plaintiffs reimbursement because they did not expressly request a due process hearing in their letter rejecting the Westport Board's proposed placement.

■ Exercising its equitable discretion and based upon the particular circumstances of this case, the court finds that an award of reimbursement from the time that Lukas was placed in the Foundation School through the end of the summer term of 1992 is appropriate. The Westport Board first presented the plaintiffs with a draft IEP for Lukas on May 25, 1991. Five days later, Keith Bardos, formerly the plaintiffs' attorney, wrote to the Westport Board rejecting the proposed placement. The plaintiffs then placed Lukas at the Foundation School. Approximately six months later, on December 6, 1991, the plaintiffs' present attorney wrote to the Westport Board, indicating that the plaintiffs were seeking funding for Lukas's placement at the Foundation School. Communication between the Westport Board and the plaintiffs continued, and on May 7, 1992, the Westport Board presented the plaintiffs with a draft IEP for the 1992–93 school year. The plaintiffs rejected this proposed placement on May 8, 1992, and, through present counsel, requested a due process hearing.

The plaintiffs' May 8, 1992 request for administrative review came almost one year after the plaintiffs rejected the school board's proposed 1991–92 placement. However, the plaintiffs promptly and in writing alerted the Westport Board of their dissatisfaction with the proposed 1991–92 placement. The record also reflects that, as of December, 1991, the Westport Board was aware that the plaintiffs were seeking funding for the 1991–92 school year. In addition, after they placed Lukas at the Foundation School, the plaintiffs continued to meet with Westport Board officials to develop an IEP for the 1992–93 school year. Thus, this is not a case where the parents failed to voice their dissatisfaction with a placement or refused to allow the school board to evaluate their child.

The record also indicates that there were several efforts at communication between the plaintiffs and the Westport Board, despite some misunderstandings on both sides that may have hindered the parties' working relationship. The administrative hearing officer found, for example, that prior to 1991 the Westport Board "invested an unusual amount of staff time ... in meeting with [Lukas's] parents" and evaluating him. (Hearing Decision 93–10, Conclusions of Law ¶ 2.) The hearing officer went on to state: "Unfortunately, what was intended as good faith flexibility by the Board may have been interpreted as bureaucratic confusion by [Lukas's] parents." (*Id.*) In addition, the hearing officer found that

[Lukas's] parents invested enormous amounts of time and energy in seeking help for [Lukas] and themselves, including the writing of several clear and intelligent letters to the Board. Their primary request—an appropriate program of services for [Lukas]—never changed. However, when they did not provide any specific suggestions concerning the Board's proposed program for [Lukas] their subsequent action of enrolling him in a private program may have appeared to Board staff members as evidence that they did not 'give the Board a chance'."

(*Id.* at ¶ 3.)

The court certainly cannot find that the plaintiffs were irresponsible or uncooperative. Indeed, the plaintiffs and the Westport Board are to be commended for their respective efforts to arrange a suitable placement for Lukas.

The court concurs with the plaintiffs' statement that the only "limit" on judges fashioning equitable relief pursuant to 20 U.S.C.A. § 1415(e)(2) is the consideration of what is "appropriate" in light of the purposes of the IDEA. (Pl. Brief, doc. # 13 at 11 (citing *Burlington*, 471 U.S. at 369), 105 S.Ct. at 2002.) The court finds that the equities in this case make it appropriate to order an award of reimbursement from the time that Lukas was placed at the Foundation School

in 1991, through the end of the summer term of 1992.

## CONCLUSION

Based on the foregoing, the plaintiffs' motion for summary judgment [doc. # 12] is GRANTED, the Westport Board's motion for summary judgment [doc. # 17] is DENIED, and the joint motion by the State Board and State Department of Education [doc. # 20] is DENIED.

It is further ORDERED that counsel for the plaintiffs shall submit documentation of the plaintiffs' special education expenditures, as well as costs and attorneys' fees. The court will enter judgment after it has reviewed the plaintiffs' submissions and any objections thereto filed by the defendants.

SO ORDERED.